# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-1352

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Juan Carlos Chavez-Ramirez, also | * | |
| known as Lorenzo Cruz Sanchez, | * | [UNPUBLISHED] |
| also known as Lorenzo Sanchez-Cruz, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 23, 2011
Filed: January 18, 2012

_____

Before LOKEN, BEAM, and MURPHY, Circuit Judges.

_____

PER CURIAM.

Juan Chavez-Ramirez appeals his below-Guidelines sentence of 14 months, 19 days, for illegal re-entry in violation of 8 U.S.C. § 1326(a). We affirm.

## I.    BACKGROUND

Chavez-Ramirez was deported in 1997, after living illegally in the United States for almost twenty-four years, from the time he was six or seven[1] years old.  He soon returned after deportation, and following his felony conviction for possession of cocaine, was deported in 2005.  Once again, he returned almost immediately, was detected at the border, and was again deported six days later in 2005.  He apparently returned to the United States, and, following his detection after a traffic stop in March 2010, Chavez-Ramirez was charged with, and pleaded guilty to, the current offense.

At sentencing, Chavez-Ramirez requested that the district court[2] depart downward based upon United States Sentencing Guidelines Manual § 2L1.2, cmt. n.8 (suggesting a downward departure for "cultural assimilation" if the defendant was brought to the United States illegally as a young child and had resided here continuously since that time).  The district court declined this invitation, stating that Chavez-Ramirez did not meet the requirements of the cultural assimilation guideline.  The district court found that Chavez-Ramirez did not "continuously reside" in the United States since childhood because of the deportations in 1997 and 2005.  The court also explained that Chavez-Ramirez's significant criminal history, including two felonies (cocaine possession and forgery), three misdemeanors (burglary, domestic assault and petty theft), and two traffic offenses, precluded Chavez-Ramirez from qualifying for the departure.

The presentence investigation report calculated Chavez-Ramirez's advisory Guidelines range as 15-21 months.  The district court sentenced Chavez-Ramirez just below the bottom of the range to 14 months plus 19 days, to reflect credit for the 11

[1]The record is not entirely clear on this point.

[2]The Honorable Stephen N. Limbaugh, Jr., United States District Court for the Eastern District of Missouri.

days Chavez-Ramirez spent in the custody of Immigration awaiting prosecution in federal court. On appeal, Chavez-Ramirez argues that the district court committed procedural error in its application of U.S.S.G. § 2L1.2; that the district court erred in refusing to reduce his sentence to account for disparities between illegal re-entry defendants in the Eastern District of Missouri and those in "fast-track" districts; and that the district court failed to adequately explain the reasons for his sentence.

## II.    DISCUSSION

We review Chavez-Ramirez's sentence under an abuse-of-discretion standard to determine whether the sentence is free of procedural error and whether it is substantively unreasonable. United States v. Schmidt, 571 F.3d 743, 748 (8th Cir. 2009). The denial of a downward departure is unreviewable unless the district court had an unconstitutional motive or an erroneous belief that it was without the authority to grant the departure. United States v. Anderson, 570 F.3d 1025, 1034 (8th Cir. 2009).

The district court did not commit procedural error in concluding that Chavez-Ramirez did not qualify for downward departure relief under § 2L1.2. Application note 8 to this guideline provides that there may be cases in which a downward departure is appropriate based upon the circumstances of a defendant who was brought as a child to the United States and lived most of his or her life here. The note recommends that the district court take into account whether the defendant continually resided in the United States, and the seriousness and extent of the defendant's criminal history, focusing on the criminal acts which occurred after the defendant had illegally reentered. U.S.S.G. § 2L1.2, cmt. n.8. Chavez-Ramirez argues the district court erred in requiring his continuous physical presence in the United States in order to qualify for relief, and argues that as someone who immediately returned after each deportation, he has "continuously resided" in the United States since he was a young child. Even if this is true, the district court's

alternate basis for denying relief–based upon Chavez-Ramirez's significant criminal history–provides a permissible basis to deny the departure. Accordingly, the district court did not have an unconstitutional motive in refusing to apply the downward departure guideline, nor was the court operating under an erroneous belief that it was without authority to grant the departure. See Anderson, 570 F.3d at 1034.

Second, the district court did not err in applying the four-level enhancement from U.S.S.G. § 2L1.2 for Chavez-Ramirez's illegal re-entry as a convicted felon. Chavez-Ramirez argues that this guideline is "fundamentally flawed" and results in a sentencing range that overstates the seriousness of Chavez-Ramirez's offense and constitutes double counting or double punishment. Chavez-Ramirez also asserts that there is no empirical evidence to support this particular guideline. Two of Chavez-Ramirez's arguments are foreclosed by circuit precedent. United States v. Dyck, 334 F.3d 736, 740 (8th Cir. 2003) (holding that § 2L1.2 does not double count because the Sentencing Commission intended that the prior conviction be used to both enhance a base offense level and calculate a criminal history score); United States v. Talamantes, 620 F.3d 901, 902 (8th Cir. 2010) (rejecting the inadequate-empirical-data argument because it is properly made to the district, not appellate, court). And the district court did not err in refusing to find that the sentencing range overstated the seriousness of Chavez-Ramirez's offense.

Chavez-Ramirez's argument regarding the disparity between non-fast-track districts and fast-track districts is also without merit. Although it could have varied downward on this basis, the district court's failure to do so was certainly not an abuse of its discretion. United States v. Bolivar-Diaz, 594 F.3d 1003, 1004-05 (8th Cir. 2010) (rejecting defendant's substantive reasonableness challenge when one of the arguments presented to the district court was the unfairness of having resided in a non-fast-track district). Finally, Chavez-Ramirez's argument that the district court did not adequately explain the sentence is belied by the record.

-4-

## III. CONCLUSION

We affirm the sentence imposed by the district court.

_____